# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JOSHUA FLATI,**

    **Plaintiff,**

v.                                    **Civil Action No. 2:15cv47**
                                            **(Judge Bailey)**

**C/O RON WAYT; C/O STEVE**
**RICHARDSON; C/O CASEY**
**BERISFORD; c/o CODY ELLIOT; and**
**C/O JEREMY KILGORE,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On June 29, 2015, Plaintiff initiated this case by filing a *pro se* civil rights complaint against the above-named Defendants pursuant to 42 U.S.C. § 1983. ECF No. 1. On July 16, 2015, Plaintiff was granted leave to proceed *in forma pauperis*, and on August 12, 2015, he paid the required initial partial filing fee. ECF Nos. 9 & 11. On September 23, 2015, the undersigned conducted a preliminary review of this matter and determined that summary dismissal was not appropriate. Therefore, an Order to Answer was entered [ECF No. 12] and twenty-one day summonses were issued for service by the U.S. Marshal.

On October 28, 2015, J. Eric Barchiesi filed a Notice of Appearance on behalf of Defendants [ECF No. 22] and filed a Motion for Extension for Time to File Response to Complaint. ECF No. 23. The motion was granted [ECF No. 24], and on November 11, 2015, Defendants filed a Motion to Dismiss for Failure to State a Claim [ECF No. 26] together with a memorandum in support. ECF No. 27. A Roseboro Notice was issued on November 12, 2015. ECF No. 28.

On January 21, 2016, Thomas E. Buck filed a Notice of Appearance on behalf of Defendants [ECF No. 36], and on January 22, 2016, Mr. Barchiesi filed a Motion to Withdraw [ECF No. 37] which was granted that same day. ECF No. 38.

On February 24, 2016, Defendants filed a Motion to Withdraw their Motion to Dismiss and for Leave to File a new Motion to Dismiss. ECF No. 47. The motion was granted by order entered on February 26, 2016. ECF No. 50. On February 26, 2016, E. Lavoyd Morgan filed a Notice of Appearance on Behalf of Plaintiff. ECF No. 51. On March 25, 2016, Defendants filed a Motion to Dismiss Plaintiff's Complaint. ECF No. 52. On July 7, 2016, Plaintiff filed a Response [ECF No. 54], and on July 14, 2016, Defendants filed a Reply. ECF No. 55.

## II. THE PLEADINGS

### A. The Complaint

Plaintiff alleges that, on October 31, 2013, he was housed in Pod B4 at the Northern Regional Jail in Moundsville, West Virginia. Plaintiff further alleges that at 10:30 pm on that date he was involved in an altercation with another inmate on the top tier of the pod. Plaintiff maintains that correctional officers Kilgore, Wayt, Robinson, Adams, Norman and Ferrell came into the Pod and yelled: "get down on the floor." Plaintiff alleges that before he could respond, he was hit from behind by another inmate, but that he did get down on his knees and locked his hands behind his head thereby submitting to Defendants' authority. Plaintiff alleges that despite his compliance with the order to get down, Defendant Berisford used a large can of pepper spray and "shot" him in the side of the face. Plaintiff alleges that Defendants Wayt, Robinson, Kilgore and Elliot then slammed his face into the concrete floor leaving him in a daze. Plaintiff further alleges that Defendant Wayt then kicked him in the face. Finally, Plaintiff alleges that Defendants Wayt, Robinson, Kilgore and

Elliot hit him in the face several times while one of the Defendants stood with his boot on the back of his head and neck. Plaintiff maintains that he was then picked up and dragged to the medical department and eventually transferred to Wheeling Hospital. Plaintiff alleges that medical personnel at Wheeling Hospital discovered that he had sustained a broken orbital bone, two fractures of the jaw, a concussion, and a severed nerve in the flesh of his cheekbone. Plaintiff alleges he was then transferred to Ruby Memorial Hospital where he spent six days in the intensive care unit. Plaintiff alleges that approximately seven days after he was transferred back to Northern Regional Jail, he had surgery on his face in which two plates and a piece of plastic were used to reconstruct his orbital bone. Plaintiff maintains that as a result of Defendants' actions, he has a disfigurement of his cheekbone, a scar on the corner of his right eye, and he continues to have severe pain in his face, numbness in the flesh around his cheekbone, and suffers from anxiety attacks and difficulty dealing with crowds of people. ECF No. 1-2.

For relief, Plaintiff seeks $100,000 in compensatory damages from Defendants Berisford, Robinson, Elliot, Kilgore and $250,000 in compensatory damages from Defendant Wayt. In addition, Plaintiff seeks $500,000 in punitive damages from Defendants Berisford, Robinson, Elliot and Kilgore and $1,000,000 in punitive damages from Defendant Wayt. ECF No. 1 at 9.

**B. Defendants' Motion to Dismiss**

In response to the complaint, Defendants maintain that they were not properly served under Rule 4(a) and (e) of the Federal Rules of Civil Procedure. More specifically, Defendants allege that the summonses and complaint were sent to the Northern Regional Jail where they were received on October 2, 2015, by which time none of the defendants were employed there. In addition, Defendants allege that they are entitled to qualified immunity from Plaintiff's suit under the

circumstances alleged. Finally, Defendants allege that Plaintiff's complaint does not state believable facts necessary to proceed on an excessive force claim.

Defendants have attached an affidavit from Teresa Rush in support of their claim that none of them were employed at the Northern Regional Jail on the date the summonses were received at that institution. ECF No. 52 at 13. In addition, Defendants have attached copies of incident reports authored by Defendants Elliot, Kilgore, and Wayt, and Robinson as well as incident reports from two other responding correctional officers which were written shortly after the alleged use of excessive force, which Defendants maintain directly contradict and cast doubt on Plaintiff's allegations. ECF No. 52 at 15-20. Finally, Defendants have attached an affidavit from William Farrell, who continues to serve as a correctional officer at the Northern Regional Jail and who responded to the altercation in Pod B4 on October 31, 2013, along with defendants Wayt, Robinson, Berisford, Elliot and Kilgore. ECF No.52 at 21-22.

## C. Plaintiff's Response

With respect to Defendants' allegation regarding service, Plaintiff notes that the federal rules allow service in the manner authorized by the state service of process statute. W.Va. R. Civ. P. 4(e) requires Plaintiff, or the Court, to serve Defendants in one of four ways: by following state law for serving a summons brought in courts of general jurisdiction in the state, either where the Court is located or where service is made, delivering a copy of the summons and complaint to the individual personally, leaving a copy of the summons and complaint at the individual's home, or delivering a copy of the summons and complaint to an agent authorized to accept it.

Plaintiff then references ECF Nos. 16-20, which are the returns of service for each Defendant. Those returns establish that although service was directed to each Defendant at the

4

Northern Regional Jail, they were each served personally on October 2, 2015 at other addresses. More specifically, Defendant Kilgore was served 2880 North Pleasants Highway in St. Marys, WV [ECF No. 16] ; Defendant Berisford was served at 71649 Silhouette Drive in Martins Ferry, OH [ECF No. 17]; Defendant Wayt was served at 700 5th St., in Moundsville, WV [ECF No. 18]; Defendant Elliot was served at 191 Main St., in New Martinsville, WV [ECF No. 19]; and Defendant Robinson was served at 722 3rd St. in New Martinsville, WV. ECF No. 20.

With respect to Defendants claim of qualified immunity, Plaintiff maintains that as of October 2013, it was clearly established law that he had the right to be free from the infliction of unnecessary and wanton pain and suffering and free from the use of force which was intended to punish rather than maintain order. Plaintiff maintains that based on clearly established law, no reasonable law correctional officer, including Defendants, could believe it was lawful to spray an inmate in the face with OC spray without provocation and, while physically restrained, slam his face into the concrete floor hard enough to make him almost lose consciousness, and while in a helpless state continuously viciously kicked him in the face head and neck and chest; causing him to suffer a broken orbital bone, two fractures of the jaw, a concussion, and a severed nerve in the flesh of his cheekbone.

Finally, with respect to Defendant's claim that Plaintiff does not state believable facts necessary to proceed, Plaintiff maintains that Defendants have done nothing but attempt to change and misconstrue the facts plainly stated in the complaint. Plaintiff maintains that the complaint contains detailed allegations and exhibits in regard to the malicious assault and unjustified excessive force used by Defendants, and meets and exceeds his pleading obligations.

**D. Defendants' Reply**

In reply, Defendants argue that the facts claimed by Plaintiff are untenable, and this court is not required to accept them as a pleading of particularized facts that would meet federal pleading standards under Iqbal and Twombly. In addition, Defendants reiterate their claim regarding qualified immunity. Finally, Defendants assert for the first time the affirmative defense that Plaintiff did not grieve his complaints that Wayt struck him in the face, or that Robinson, Kilgore and Elliot hit him several times in the face and chest.[1]

### III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

---

[1] "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731 734 *D.Md.2006). Therefore the undersigned has not considered this argument in recommending disposition of Defendants' Motion to Dismiss.

the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### IV. ANALYSIS

**A. Service of Process**

As previously noted, Defendants had argued that Plaintiff's complaint is due to be dismissed because service of process was improper. Defendants have now withdrawn their argument after acknowledging that they relied on incomplete documents. Accordingly, Defendants' Motion to

7

Dismiss based on lack of personal service of process is without merit and requires no further discussion.

**B. Qualified Immunity**

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Pernell, 652 F.3d 524, 531 (4th Cir. 2011)(*en banc*)(citing Saucier v. Katz, 533 U.S. 194, 206 (2001) *overruled in part by* Pearson v. Callahan, 555 U.S. 223 92009). "Qualified immunity may be raised in a motion to dismiss." Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997). Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The Supreme Court mandated a two-step sequence for resolving qualified immunity claims in Saucier v. Katz, 533 U.S. 194 (2001). Under Saucier, a court first must decide "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 236, 129 (2009) (citing Saucier, 533 U.S. at 201) (internal citations omitted). If the plaintiff satisfies the first step, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id*. (quoting Saucier, 533 U.S. at 201).

Analysis of a claim for use of excessive force begins with "identification of the specific

8

constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). In the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and unusual punishments.[2] The validity of the prisoner's claim must "be judged by reference to th[is] specific constitutional standard...rather than to some generalized 'excessive force' standard." Graham, 490 U.S. at 394; see, e.g, Whitley v. Albers, 475 U.S. 312, 318-326 (1986) (claim of excessive force to subdue convicted prisoner is to be analyzed under an Eighth Amendment standard).

To state an Eighth Amendment claim, an inmate must prove two factors: (1) objectively, the alleged punishment or act is sufficiently serious that it violates contemporary standards of decency; and (2) subjectively, the prison official must have a sufficiently culpable state of mind. Farmer v. Bennan, 511 U.S. 825, 834 (1994); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The subjective component of the claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillan, 503 U.S. 1, 7 (1992). The question of whether the measure taken inflicted unnecessary and wanton pain and suffering turns on "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In determining whether a prison official acted maliciously and sadistically, the court should consider the following: "the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and

---

[2]The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Robinson v. California, 370 U.S. 660, 666–67 (1962).

any efforts to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (internal quotation marks omitted).

Also, the inmate must prove the corrections officer's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8.). In assessing this component, the court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). When a prison official uses force to cause harm maliciously and sadistically, "contemporary standards of decency always are violated... This is true whether or not [sic] significant injury is evident." Hudson, 503 U.S. at 9. However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Id. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

The Court is required to take the facts pleaded by Plaintiff as true and consider them in the light most favorable to him when considering Defendants' Motion to Dismiss. In this case, Plaintiff acknowledges that he was involved in an altercation with another inmate. However, he asserts that he complied with Defendants' orders that he get down on his knees and lock his fingers and was offering no resistance to them. Plaintiff further alleges that despite his following instructions and offering no resistance, Defendants sprayed him with mace, slammed his face first into the concrete floor and kicked and hit him. Plaintiff alleges that he suffered significant injuries, including a broken orbital bone, two fractures of his jaw, a concussion and severed nerve in his cheekbone. Clearly these allegations are sufficient to state a claim of excessive force, and his constitutional right to be free from intentional infliction of excessive force was clearly established on October 31, 2013.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss, ECF No. 52, be **DENIED**, and further recommends that the Court issue a scheduling order setting forth the time periods for all pretrial matters.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to all counsel of record via electronic means.

DATED: October 17, 2016

/s Michael John Aloi
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE